**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 25, 2014.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TOOTIE PIE COMPANY, INC. D/B/A | § | Case No. 13-51808 |
| TOOTIE GOURMET PIE CAFÉ | § | |
| | § | |
| Debtor | § | |

**ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**
**DATED FEBRUARY 14, 2014**

On February 14, 2014, Debtor filed its First Amended Plan of Reorganization Dated

February 14, 2014, and on February 21, 2014, Debtor filed its First Supplement to its First

Amended Plan of Reorganization Dated February 14, 2014 (collectively, "Debtor's Plan", "the

Plan" or "Plan of Reorganization").   On February 14, 2014, Debtor filed its First Amended

Disclosure Statement Dated February 14, 2014, and on February 27, 2014, Debtor filed its First

1

Supplement to its First Amended Disclosure Statement Dated February 14, 2014 (collectively, "Debtor's Disclosure Statement" or "the Disclosure Statement").

On March 24, 2014, came on to be heard confirmation of the Plan and final approval of the Disclosure Statement. The Court, having found that the Plan and Disclosure Statement, had been properly transmitted to creditors, equity security holders and parties in interest whose acceptance is required by law, and notice of this hearing, having been given to all interested parties, and the Court, having heard and considered evidence and testimony at such hearing, finds that the Plan proposed herein, have been accepted in writing by the creditors and equity security holders whose acceptance is required by law with the changes announced in open Court on March 24, 2014 as follows:

   a.  As announced in open court, the following paragraph is deleted from the Plan in regard to the Class 2 Taxing Authorities' Claims Solely in regard to Tarrant County, Bexar County, Dallas County, and the City of Frisco:

"The claim of these **impaired** secured creditors in the approximate total amount $17,984 will be paid at the applicable non-bankruptcy rate of interest as provided under 11 U.S.C. 511.   The claims shall be paid in full in 12 quarterly payments. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan.   The taxing authorities shall retain all liens they currently hold, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until they receive payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with the confirmation of this Plan. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to this taxing authority, or any failure to pay post-petition ad valorem property taxes owed to this taxing authority prior to delinquency, either of which shall constitute an event of default under the Plan as to this taxing authority, they shall send notice of such default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the taxing authority may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The taxing authorities are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice."

2

And the following Paragraph is added:

"The claim of these **impaired** secured creditors in the approximate total amount $17,984 will be paid at the applicable non-bankruptcy rate of interest as provided under 11 U.S.C. 511. Interest related to tax year 2012 and before shall accrue post-petition interest beginning from the petition date, and interest related to tax year 2013 shall accrue interest beginning February 2014. The interest shall begin to accrue from such dates until the related tax claim is paid in full. The claims shall be paid in full in 12 quarterly payments. The first payment shall be due and payable 60 days after the confirmation order is signed. The taxing authorities shall retain all liens they currently hold, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until they receive payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with the confirmation of this Plan. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to this taxing authority, or any failure to pay post-petition ad valorem property taxes owed to this taxing authority prior to delinquency, either of which shall constitute an event of default under the Plan as to this taxing authority, they shall send notice of such default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the taxing authority may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The taxing authorities are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice."

b.  As announced in open court, the following paragraph is added to the Plan as paragraph 3.03(a)(i) in regard to claims made by the IRS:

"Debtor shall file all delinquent federal tax returns within 30 days of the signing of the confirmation order. The IRS shall be permitted to amend its claim within 90 days of Debtor's filing any delinquent tax return. To the extent the IRS' claim consists of an unsecured claim, the claim shall be paid in accordance with the Class 6 General Unsecured Claims; however the claim shall be paid within 5 years of the Effective Date. "

c.  As announced in open court, the following paragraph is deleted from the Plan in regard to Westlake Retail Ltd.'s Class 4 Claim:

"The secured portions of the claim of this **impaired** creditor is estimated to be in the amount of $2000. The allowed secured claim shall be paid in full in 12 quarterly payments at 7% simple interest. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan. The Class 4 Claim shall retain shall its lien and security interest until the balance of its secured claim is paid in full in accordance

with the Plan. In the event an objection is made and sustained as to the priority or validity of the Creditor's secured claim and the Creditor's claims is found to be partially or completely unsecured, the unsecured portion shall be added to the general unsecured class. The holder of allowed class 4 secured claim may elect to convert all or a portion of its secured debt to convertible preferred stock to be issued by the reorganized debtor at \$.50 per share of preferred convertible stock. Terms for electing to convert debt to stock and likely salability of such shares are discussed in Exhibit H. The election to convert all or a portion of the creditor's debt to equity must be made on the Creditor's ballot within the time for voting as determined by the Court; otherwise, no portion of the Creditor's claim shall be converted. Once converted, the equity cannot be converted back to debt. Debtor contends the claim filed by the Creditor, which includes a year of lease rejection damages, is overstated in that Debtor contends the space has been re-leased. Debtor intends to object to the claim if it is not amended to account for the mitigation of damages. The allowed unsecured portion of this Debtor's claim shall be paid in accordance with Class 6, General Unsecured Claims."

And the following Paragraph is added:

"The secured portions of the claim of this **impaired** creditor is agreed to be \$2000. This allowed secured claim shall be paid in full in 12 quarterly payments at 7% simple interest. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan. The Class 4 Claim shall retain shall its lien and security interest until the balance of its secured claim is paid in full in accordance with the Plan. The holder of allowed class 4 secured claim may elect to convert all or a portion of its secured debt to convertible preferred stock to be issued by the reorganized debtor at \$.50 per share of preferred convertible stock by notifying Debtor's counsel in writing within 30 days of the signing of the confirmation order. Terms for electing to convert debt to stock and likely salability of such shares are discussed in Exhibit H to the disclosure statement. Once converted, the equity cannot be converted back to debt. The allowed unsecured portion of this Debtor's claim shall be paid in accordance with Class 6, General Unsecured Claims. The parties agree that the creditor has an administrative claim in the amount of \$11,393.62 for rent accrued through September 4, 2014. The administrative claim shall be paid within 60 days of the effective date of the plan."

d.  As announced in open court, the following paragraph is deleted from the Plan in regard to the Texas Comptroller's Office's claim:

"The Texas Comptroller filed a claim in the amount of \$7901.55. To the extent any taxes are owed, the Comptroller shall receive the present value of its claim in regular installments paid over a period not exceeding 5 years from the order of relief."

And the following Paragraph is added:

"The Texas Comptroller filed claims totaling $7901.55. Payments shall be made in accordance with 11 U.S.C. § 511(a) in equal monthly installments beginning on the first day of the month following the Effective Date and continuing on the first day of the month thereafter, over a period not to exceed 5 years from the date of the Order of Relief with interest in accordance with Tex Tax Code § 111.060(b))."

(2)     The Plan, and the proponents of the Plan, have complied with the provisions of

11 U.S.C. § 1129(a); the Plan has been proposed in good faith and not by any means forbidden;

(3)     With respect to each impaired class of claims or interests-

a.   each holder of a claim or interest of such class –

i.   has accepted the plan; or

ii.  will receive or retain under the plan an account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor-in-Possession were liquidated under chapter 7 of Title 11 on such date; All payments made or promised by the Debtor, or by any other person or services or for costs and expenses, or in connection with the Plan and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court;

(4) with respect to each class of claims or interests –

a.   such class has accepted the plan; or

b.   such class is not impaired under the plan;

(5)     if a class of claims is impaired under the plan, at least one class of claims that is

impaired under the plan has accepted the plan, determined without including any acceptance of

the plan by any insider;

(6)     The identity, qualifications and affiliations of the persons who are to be directors

or officers, or voting trustees, if any, of the Debtor, after confirmation of the Plan, have been

fully disclosed, and the appointment of such persons to such offices, or their continuance therein,

is equitable and consistent with the interests of the creditors and equity security holders and with public policy;

(7)    The identity of any insiders that will be employed or retained by the Debtor, and their compensation, have been fully disclosed;

(8)    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

    a.  with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

    b.  with respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such claim will receive on account of such claim regular installment payments in cash--(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b));

    c.  with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) but for the secured status of that claim, the Plan provides that the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed for section 507(a)(8) claimants.

(9)    With respect to a class of secured claims that has not accepted the plan, the plan provides-- (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

6

(10)    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan.

It is therefore ORDERED, ADJUDGED and DECREED:

(11)    The Plan proposed herein, with the changes announced in open Court on March 24, 2014, has been accepted in writing by the creditors whose acceptance is required by law.

a.   As announced in open court, the following paragraph is deleted from the Plan in regard to the Class 2 Taxing Authorities' Claims Solely in regard to Tarrant County, Bexar County, Dallas County, and the City of Frisco:

"The claim of these **impaired** secured creditors in the approximate total amount $17,984 will be paid at the applicable non-bankruptcy rate of interest as provided under 11 U.S.C. 511.   The claims shall be paid in full in 12 quarterly payments. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan.   The taxing authorities shall retain all liens they currently hold, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until they receive payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with the confirmation of this Plan. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to this taxing authority, or any failure to pay post-petition ad valorem property taxes owed to this taxing authority prior to delinquency, either of which shall constitute an event of default under the Plan as to this taxing authority, they shall send notice of such default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the taxing authority may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The taxing authorities are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice."

And the following Paragraph is added:

 "The claim of these **impaired** secured creditors in the approximate total amount $17,984 will be paid at the applicable non-bankruptcy rate of interest as provided under 11 U.S.C. 511.   Interest related to tax year 2012 and before shall accrue post-petition interest beginning from the petition date,  and interest related to tax year 2013 shall accrue interest beginning February 2014.   The interest shall begin to accrue from such dates until the related tax claim is paid in full.  The

7

claims shall be paid in full in 12 quarterly payments. The first payment shall be due and payable 60 days after the confirmation order is signed. The taxing authorities shall retain all liens they currently hold, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until they receive payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with the confirmation of this Plan. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to this taxing authority, or any failure to pay post-petition ad valorem property taxes owed to this taxing authority prior to delinquency, either of which shall constitute an event of default under the Plan as to this taxing authority, they shall send notice of such default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the taxing authority may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The taxing authorities are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice."

b.  As announced in open court, the following paragraph is added to the Plan as paragraph 3.03(a)(i) in regard to claims made by the IRS:

"Debtor shall file all delinquent federal tax returns within 30 days of the signing of the confirmation order. The IRS shall be permitted to amend its claim within 90 days of Debtor's filing any delinquent tax return. To the extent the IRS' claim consists of an unsecured claim, the claim shall be paid in accordance with the Class 6 General Unsecured Claims; however the claim shall be paid within 5 years of the Effective Date. "

c.  As announced in open court, the following paragraph is deleted from the Plan in regard to Westlake Retail Ltd.'s Class 4 Claim:

"The secured portions of the claim of this **impaired** creditor is estimated to be in the amount of $2000. The allowed secured claim shall be paid in full in 12 quarterly payments at 7% simple interest. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan. The Class 4 Claim shall retain shall its lien and security interest until the balance of its secured claim is paid in full in accordance with the Plan. In the event an objection is made and sustained as to the priority or validity of the Creditor's secured claim and the Creditor's claims is found to be partially or completely unsecured, the unsecured portion shall be added to the general unsecured class. The holder of allowed class 4 secured claim may elect to convert all or a portion of its secured debt to convertible preferred stock to be issued by the reorganized debtor at $.50 per share of preferred convertible stock. Terms for electing to convert debt to stock and likely salability of such shares are discussed in Exhibit H. The election to convert all or a portion of the creditor's

debt to equity must be made on the Creditor's ballot within the time for voting as determined by the Court; otherwise, no portion of the Creditor's claim shall be converted. Once converted, the equity cannot be converted back to debt. Debtor contends the claim filed by the Creditor, which includes a year of lease rejection damages, is overstated in that Debtor contends the space has been re-leased. Debtor intends to object to the claim if it is not amended to account for the mitigation of damages. The allowed unsecured portion of this Debtor's claim shall be paid in accordance with Class 6, General Unsecured Claims."

And the following Paragraph is added:

"The secured portions of the claim of this **<u>impaired</u>** creditor is agreed to be $2000. This allowed secured claim shall be paid in full in 12 quarterly payments at 7% simple interest. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan. The Class 4 Claim shall retain shall its lien and security interest until the balance of its secured claim is paid in full in accordance with the Plan. The holder of allowed class 4 secured claim may elect to convert all or a portion of its secured debt to convertible preferred stock to be issued by the reorganized debtor at $.50 per share of preferred convertible stock by notifying Debtor's counsel in writing within 30 days of the signing of the confirmation order. Terms for electing to convert debt to stock and likely salability of such shares are discussed in Exhibit H to the disclosure statement. Once converted, the equity cannot be converted back to debt. The allowed unsecured portion of this Debtor's claim shall be paid in accordance with Class 6, General Unsecured Claims. The parties agree that the creditor has an administrative claim in the amount of $11,393.62 for rent accrued through September 4, 2014. The administrative claim shall be paid within 60 days of the effective date of the plan."

d. As announced in open court, the following paragraph is deleted from the Plan in regard to the Texas Comptroller's Office's claim:

"The Texas Comptroller filed a claim in the amount of $7901.55. To the extent any taxes are owed, the Comptroller shall receive the present value of its claim in regular installments paid over a period not exceeding 5 years from the order of relief."

And the following Paragraph is added:

"The Texas Comptroller filed claims totaling $7901.55. Payments shall be made in accordance with 11 U.S.C. § 511(a) in equal monthly installments beginning on the first day of the month following the Effective Date and continuing on the first day of the month thereafter, over a period not to exceed 5 years from the date of the Order of Relief with interest in accordance with Tex Tax Code § 111.060(b))."

9

(12)    The Disclosure Statement is Approved.

(13)    The Plan proposed herein, with the changes announced in open Court on March 24, 2014, is hereby Confirmed.

(14)    The Reorganized Debtor's Board of Directors, as established in accordance with Debtor's Plan and Disclosure Statement, is hereby authorized to implement Debtor's Plan and Disclosure statement.

(15)    The Court shall retain jurisdiction until this Plan is fully consummated and/or a final decree is entered, whichever event occurs earlier, specially including, but not limited to, the jurisdiction to determine all objections that may be filed to claims of creditors herein; to fix and award all compensation to parties who may be entitled; to herein determine all questions concerning assets or property of the Debtor, including any questions relating to any sums of money, services or property due to the Debtor; and determine all matters of any nature or type necessary and appropriate to carry out the provisions of this Plan.

(16)    A copy of the confirmed Plan as supplemented is attached as Exhibit A.

# # #

Approved as to Form:


/s/ Ronald J. Smeberg
RONALD J. SMEBERG

SMEBERG LAW FIRM, PLLC
11550 IH 10 West, Suite 180
San Antonio, Texas 78230
210-695-6684 (Tel)
281-754-4042 (Fax)
ron@smeberg.com
ATTORNEY FOR DEBTORS

LINEBARGER, GOGGAN, BLAIR &
SAMPSON, LLP.
711 Navarro, Suite 300
San Antonio, Texas 78205
Telephone: 210-225-4422
Facsimile:210-226-4308
By: /s/ David Aelvoet
David Aelvoet
Texas Bar
No.: 00786959
Don Stecker
Texas Bar
No.: 19095300
**ATTORNEYS FOR BEXAR COUNTY
CITY OF FRISCO, DALLAS COUNTY
AND TARRANT COUNTY**


ROBERT PITMAN
UNITED STATES ATTORNEY
By: /s/ Steven B. Bass
STEVEN B. BASS
Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512)916-5858/Fax(512)916-5854
Florida State Bar No. 767300
Counsel for the United States of America

/s/ Joshua D. Bradley
Joshua D. Bradley
Admitted *Pro Hac Vice*
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201
Phone: (410) 727-6600
Fax: (410) 727-1115
E-Mail: jbradley@rosenbergmartin.com
*Attorney for Westlake Realty Limited
Partnership*

/s/ Jason A. Starks
JASON A. STARKS
Assistant Attorney General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 475-4867
Facsimile: (512) 482-8341

ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS

11

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **TOOTIE PIE COMPANY, INC. D/B/A** | § | Case No. 13-51808 |
| **TOOTIE GOURMET PIE CAFÉ** | § | |
| | § | |
| **Debtor** | § | |

## DEBTOR TOOTIE PIE COMPANY, INC.'S FIRST AMENDED PLAN OF REORGANIZATION DATED FEBRUARY 14, 2014

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Tootie Pie Company, Inc. (the "Debtor") from operation cash flow**.**

This Plan provides for one class of non-tax priority claims, one class of secured tax claims, one class of secured prior landlord claims, one class of prepetition secured lender claims, one class of unsecured critical vendor claims, one class of general unsecured claims, and one class of equity claims. Creditors holding allowed unsecured claims will have several options for distribution with one option being to receive distributions valued by the proponent of this Plan at approximately 50 cents on the dollar at the current federal judgment interest rate over ten years. This Plan also provides for the payment of non-tax priority claims in full in the first 60 months of the plan and payment of administrative claims in full within 60 days of confirmation.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Priority Employee Wages. | Y | Yes |
| 2.02. Class 2. | Secured Taxing Authorities. | Y | Yes |

1

| | | | |
|---|---|---|---|
| 2.03. Class 3. | Secured Claim of TCA Claim Holders | Y | Yes |
| 2.04. Class 4. | Secured Landlord Claim (Westlake) | Y | Yes |
| 2.05. Class 5. | Unsecured Critical Vendors | Y | Yes |
| 2.06. Class 6. | General Unsecured Creditors | Y | Yes |
| 2.07. Class 7. | Equity Holders. | Y | No (Deemed to Reject) |
| 2.08. Class 8. | Secured Landlord Claim (Allen) | Y | Yes |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01.    Administrative Expense Claims. The following administrative claims shall be paid within 60 days of the Effective date unless the claimants elect to convert their claims to preferred stock in accordance with the disclosure statement.

    a.  Professional Fees of the Smeberg Law Firm are estimated to be $85,000 at the time of Confirmation.  To the extent fees are not paid prior to confirmation, they shall be paid within 60 days of the Effective date.

    b.  Les Doss has been the Debtor's CEO and CFO since July of 2013.  Les Doss has been accumulating salary since he accepted these positions.  His estimated administrative claim is $60,000.

    c.  Teresa Britts CPA has been employed as Debtor's accountant to prepare the 2012 and 2013 fiscal tax returns.  Her estimated administrative claim is $7000.

    d.  Dan Gostylo and Cliff Rogers loaned the Debtor $43,000 at 12% interest to pay employee payroll and necessary supply expenses at the beginning of this case. Interest on the loan at confirmation is estimated to be approximately $2150.

    e.  Westlake Retail Limited has an administrative claim for post-petition rents through September 4, 2013, in the approximate amount of $7000.

    f.  Whitestone Reit has an administrative claim for post-petition rents through September 2, 2013, in the approximate amount of $10000.00.

3.02.    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

2

3.03.  <u>Priority Tax Claims</u>.  Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

    a.   <u>Internal Revenue Service</u>. The IRS filed a claim in the amount of $2000.  Once Debtor files its 2012 tax return, Debtor contends this claim will be for zero dollars.  To the extent any taxes are owed, the IRS shall receive the present value of its claim in regular installments paid over a period not exceeding 5 years from the order of relief at 3% interest.

    b.   <u>Texas Comptroller</u>.  The Texas Comptroller  filed a claim in the amount of $7901.55.  To the extent any taxes are owed, the Comptroller shall receive the present value of its claim in regular installments paid over a period not exceeding 5 years from the order of relief.

## ARTICLE IV
## <u>TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>

4.01 Claims and interests shall be treated as follows under this Plan:

| <u>Class #</u> | <u>Description</u> | Treatment |
|---|---|---|
| 1 | Prepetition Employee Claims[1] | This class consists of **<u>impaired</u>** prepetition priority employee wages claims incurred in the 180 day prior to Debtor's bankruptcy filing.  The total amount of the class one claims is estimated to be $36,000.00.  The claims shall be paid in full in 20 quarterly payments at the federal judgment rate of interest in effect on the Effective Date of the Plan. The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan.  In the event an objection is made and sustained as to the priority or validity of a prepetition priority wages claim and the Creditor's claims is found to be partially or completely unsecured without priority, the non-priority portion shall be added to the general unsecured class.  The right of a holder of an Allowed Class 1 Claim to receive any distribution on the Effective |

[1] Note that pursuant to a first day motion requesting to pay prepetition wages earned just prior to filing, some prepetition wages were paid post petition.  These claims represent prepetition wages earned but not paid within 180 days of the case filing that were not addressed in the motion.

3

| | | |
|---|---|---|
| | | Date or any distribution date thereafter shall not be transferable.  The holder of allowed class 1 priority claim may elect to convert all or a portion of its debt to convertible preferred stock to be issued by the reorganized debtor at $.50 per share of preferred convertible stock. Terms for electing to convert debt to stock and likely salability of such shares are discussed in Exhibit H.  The election to convert all or a portion of the creditor's debt to equity must be made on the Creditor's ballot within the time for voting as determined by the Court; otherwise, no portion of the Creditor's claim shall be converted.  Once converted, the equity cannot be converted back to debt. |
| 2 | Bexar County, City of Frisco, Dallas County, Tarrant County,  Collin County,  and Kendall County.  Ad Valorem Taxes. | The claim of these **impaired** secured creditors in the approximate total amount $17,984 will be paid at the applicable non-bankruptcy rate of interest as provided under 11 U.S.C. 511.   The claims shall be paid in full in 12 quarterly payments.  The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan.  The taxing authorities shall retain all liens they currently hold, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until they receive payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with the confirmation of this Plan. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to this taxing authority, or any failure to pay post-petition ad valorem property taxes owed to this taxing authority prior to delinquency, either of which shall constitute an event of default under the Plan as to this taxing authority, they shall send notice of such default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, |

4

| | | |
|---|---|---|
| | | the taxing authority may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The taxing authorities are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice. |
| 3 | TCA Secured Claim | TCA was an **impaired** creditor that loaned Debtor operating capital in exchange for a blanket lien over all of Debtor's assets.  The claim has been sold as discussed in this disclosure statement TCA's claim shall be converted to preferred stock at $.50 per share of stock pursuant to the terms in Exhibit H.  Adequate assurance payments not made in accordance with Court order shall be added to the total amount of the Claim and will also be converted to preferred stock as provided herein. .  TCA shall retain its liens and security interests until the claim is converted to preferred stock. |

| Class # | Description | Treatment |
|---|---|---|
| 4 | Secured Lien Related to Rejected Landlord Lease. Westlake Retail, Ltd. | The secured portions of the claim of this **impaired** creditor is estimated to be in the amount of $2000.  The allowed secured claim shall be paid in full in 12 quarterly payments at 7% simple interest.  The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan.  The Class 4 Claim shall retain shall its lien and security interest until the balance of its secured claim is paid in full in accordance with the Plan. In the event an objection is made and sustained as to the priority or validity of the Creditor's secured claim and the Creditor's claims is found to be partially or completely unsecured, the unsecured portion shall be added to the general unsecured class. The holder of allowed class 4 secured claim may elect to convert all or a portion of its secured debt |

|  |  | to convertible preferred stock to be issued by the reorganized debtor at $.50 per share of preferred convertible stock. Terms for electing to convert debt to stock and likely salability of such shares are discussed in Exhibit H.  The election to convert all or a portion of the creditor's debt to equity must be made on the Creditor's ballot within the time for voting as determined by the Court; otherwise, no portion of the Creditor's claim shall be converted.  Once converted, the equity cannot be converted back to debt.  Debtor contends the claim filed by the Creditor, which includes a year of lease rejection damages, is overstated in that Debtor contends the space has been re-leased.  Debtor intends to object to the claim if it is not amended to account for the mitigation of damages.   The allowed unsecured portion of this Debtor's claim shall be paid in accordance with Class 6, General Unsecured Claims. |
| --- | --- | --- |

| Class # | Description | Treatment |
| --- | --- | --- |
| 5 | Unsecured Critical Trade Vendor Claims of Ben E. Keith, and Smeltzer Orchard Company. | Debtor's two critical vendors are Ben E. Keith, and Smeltzer Orchard Company.  Ben E. Keith's claim is in the amount of $68,842, and the Smeltzer Orchard Company claim is estimated to be in the amount of $27,495.  The claims of the Critical Trade Vendors are **impaired**.  The claims shall be paid in full in 20 quarterly payments at the federal judgment rate of interest in effect on the Effective Date of the Plan.    The first payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the effective date of the Plan.  Unsecured critical trade vendors may elect to convert all or a portion of their debt to new common stock to be issued by the reorganized debtor at $.75 per share of the new common stock.  The terms for such election and likely salability of such shares are discussed in Exhibit H to Debtor's Disclosure Statement.  The election to convert all or a portion of the creditor's debt to equity must be made on the Creditor's |

6

| | | ballot within the time for voting as determined by the Court; otherwise, no portion of the Creditor's claim shall be converted.  Once converted, the equity cannot be converted back to debt.  The right of a holder of an Allowed Class 5 Claim to receive any distribution on the Effective Date or any distribution date thereafter shall not be transferable. |

| Class # | Description | Treatment |
| --- | --- | --- |
| 6 | General Unsecured Claims in the approximate amount of $1,100,000 | The general unsecured claimants are all **impaired** and all allowed claims shall receive 50% of their claims paid out over 10 years at the federal judgment rate of interest in effect on the Effective Date of the Plan.   The claims shall be paid out in 40 equal quarterly installments.  The first quarterly payment shall be due and payable on the 1st day of the 1st month of the 1st quarter following 30 days after the Effective Date of the Plan.  Unsecured creditors may elect to convert all or a portion of their debt to new common stock to be issued by the reorganized debtor at $.75 per share of the new common stock. The terms for such election and likely salability of such shares are discussed in Exhibit H to Debtor's Disclosure Statement.  The election to convert all or a portion of the creditor's debt to equity must be made on the Creditor's ballot within the time for voting as determined by the Court; otherwise, no portion of the Creditor's claim shall be converted.  Once converted, the equity cannot be converted back to debt.  The right of a holder of an Allowed Class 6 Claim to receive any distribution on the Effective Date or any distribution date thereafter shall not be transferable. |

| Class # | Description | Treatment |
| --- | --- | --- |
| 7 | Equity Holders | Debtor has approximately 17,438,000 shares of outstanding stock.  The shares shall be "reverse split" at a ratio of 29.0635 to 1 with each shareholder receiving its pro rata share of newly issued stock (new CUSIP No.).  The total |

7

| | | |
|---|---|---|
| | | outstanding stock after the reverse split shall be approximately 600,000. The likely salability of such shares is discussed in Exhibit H to Debtor's Disclosure Statement |
| 8 | Secured Liens Related to Rejected Landlord Lease. The Village at Allen | The allowed secured portions of the claim of this **impaired** creditor is in the amount of $4000. The Debtor left several pieces of unused removeable restaurant equipment in the Allen facility such as a microwave, tables, and chairs. Debtor contends the value of these assets are approximately $4000. The Creditor shall receive the assets in full satisfaction of the allowed secured claim. Additionally, the Creditor filed an unsecured proof of claim in the amount of $86,615,08 which included one year of lease rejection damages. Debtor contends the amount of this unsecured claim should be lower because Debtor was locked out of the property in April 2013. Creditor contends it is entitled to the entire amount claimed. To avoid the cost and uncertainty of litigation, the parties have agreed that the entire Creditor's unsecured claim shall be allowed and paid in accordance with the General Unsecured Class. In exchange, the Creditor waives any administrative claim it may be entitled to. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01.  Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. Debtor shall file all objections to claims within 60 days of the Confirmation Date.

5.02.  Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03.   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01.   Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan.: The following creditors hold executor contracts and/or unexpired leases:

a.   129 Industrial Drive, Boerne, Texas 78006 (Factory) (expires in 9 months)

b.   5120 Broadway, Alamo Heights, Texas 78209 (expires in 25 months)

c.   16615 Huebner Rd, San Antonio, Texas 78248 (month to month)

d.   10515 N Mopac Expy a120, Austin, Texas 78759 (expires in 56 months)

6.02   Rejection of Remaining Executory Contracts and Unexpired Leases.  The Debtor will be conclusively deemed to have rejected all executor contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed Within Sixty (60) Days after Entry of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01   Continued Corporate Existence. The Debtor shall continue to exist after the Effective Date as a separate corporate Entity, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02   Reverse Stock Split, Amendment of Governing Documents, and Other Corporate Governance Matters.

The Debtor, by the Debtor Board Consent approved by the Bankruptcy Court or by a direct order of the Bankruptcy Court, will exchange all of its issued and outstanding equity securities for a smaller number of those securities, determined by dividing the total number of shares of Old Equity by a Reverse Stock Split Value of 29.0635.  The purpose of this action is to reduce the number of Old Equity shares issued and outstanding prior to any exchange for New Common Stock and to provide a basis for an increase in the per share price or value of New

Common Stock.  The level of the "per share" price or value of New Common Stock is important because certain additional restrictions on the transfer of those shares come into play when the per share price or value is less than five (5) dollars per share.  These restrictions (also known as "Penny Stock" rules) are imposed by federal securities laws and come primarily in the form of additional requirements for brokers who quote stocks with prices or values less than $5.00 per share.

In addition, the Debtor will amend its Articles of Incorporation (now known as a Certificate of Formation) to allow it to increase the number of shares of Preferred Stock that it is allowed to issue and to increase or decrease the number of persons comprising the Debtor's Board of Directors as required to accommodate the desire of potential new investors to control two board seats without giving those investors control over a majority of the Board of Directors.

In addition, through the Debtor Board Consent or by order of the Bankruptcy Court, the members of the Board of Directors of the Debtor will be elected for one, two and three year terms intended to create a system of staggered one year terms for Board members and a slate of officers of the Debtor will be elected for a one year term.

7.03    Exchange of Secured Claims and Administrative Claims for Series A Convertible Preferred.

The second stage of the proposed transaction with respect to the Allowed Secured Claims and Administrative Claims that desire to convert their claims to stock be called to exchange that claim against the Bankruptcy estate for shares of [Series A Convertible Preferred Stock] of the Debtor.  Such Series A Convertible Preferred Stock will be convertible on the occurrence of certain events or at the option of the holders into New Common Stock of the Debtor.

The holders of Series A Convertible Preferred Stock will have special rights with respect to governance of the Debtor for a specified period of time including, but not limited to, the right to name 2 of 5 directors of the Debtor Company by majority vote of the Convertible Preferred holders, the right to limit the number of directors to 5,  and the right to vote with common stock holders in regard to everything other than special rights afforded solely to convertible preferred stock holders..  Certain events will allow the Debtor Company to require conversion to New Common Stock at a rate of $0.50 invested for one share of New Common Stock.   The holders of Series A Convertible Preferred may convert at that rate at any time at their option.  However, once converted, those holders of New Common Stock will not have the special rights and preferences as stated in the Certificate of Rights, Preferences and Obligations of Series A Convertible Preferred Stock (the "Certificate").  All persons who may become holders of admin or secured claims should review in detail with their advisers the terms and conditions of the Debtor's proposed Series A Convertible Preferred Stock as set forth in the Certificate.

10

After the exchange of a claim for Plan Shares, that claim will be extinguished as a creditor's claim in bankruptcy.

7.04    Payment of Allowed General Unsecured Claims by Cash and Stock.  The Debtor currently has creditors holding general unsecured claims in the amount of approximately $1,200,000.  The Debtor is offering these creditors an option of receiving 50% or 100% (depending on status) of their claims [plus interest at the federal interest rate] in quarterly installments over ten (10) years or electing to receive any portion of their claims, up to 100% of those claims, in the form of New Common Stock of the Debtor at a value of $0.75 of claim value per share of New Common Stock.  Each of the creditors in that class will have to make an election on their ballot as to what proportion of their claims, if any, they wish to receive in New Common Stock of the Debtor.   The initial payment of the cash portion of those claims and all of the equity portion of those claims (or New Common Stock) will be paid or distributed on the Effective Date of the Plan.

7.05.    Issuance of Series A Convertible Preferred Stock for Cash, Exit Financing.  In addition to the potential new investors who will buy the Allowed Secured TCA Claim and then exchange it for equity, the Debtor believes additional potential new investors will contribute an additional $200,000.00 - $1,000,000.00 in cash to purchase Plan Shares and thereby provide working capital financing to the Debtor as it exits bankruptcy.  The Debtor anticipates that it will be issuing these investors shares of Series A Convertible Preferred Stock in order to provide the holders of these shares special rights to elect members of the board of directors of the Debtor. All of the rights and preferences are created and governed by the terms of the Certificate outlined above in subparagraph 3.

7.06.    Issuance of Remainder of Targeted Amount of New Common Stock to holders of Allowed Equity Interests.

The Debtor has decided to offer holders of Old Equity Interests a stake in the Debtor post-bankruptcy.  That stake will be much reduced in terms of percentage ownership of the Debtor in comparison to the 100% stake those holders had pre-bankruptcy.  The actual number of shares of New Common Stock being offered to holders of Old Equity Interests is being called the "New Equity Allocation" and is determined by a number of calculations made by the Debtor. Those considerations include the desire to limit the capital structure in order to enable greater support of the stock price and thereby support additional liquidity in the market for the Debtor's New Common Stock.

The Debtor is shooting for a maximum target of 4,000,000 shares of New Common Stock and Preferred Stock Combined issued and outstanding on a fully diluted basis, immediately after the Effective Date.  As a consequence, the Debtor expects the New Equity Allocation to be at

11

most 600,000 shares.   If not controlled by other considerations of the Debtor, the New Equity Allocation could be less than 600,000 but will not be more than 600,000 shares.[2]

Filing of Certificate of Rights, Preferences, and Obligations of Series A Convertible Preferred Stock.  Once the Certificate is negotiated and signed by all persons who will hold shares of Series A Convertible Preferred Stock and by the Debtor, the Board of Directors of the Debtor will approve and the Debtor will file the Certificate with the appropriate state authority to create the Series of Convertible Preferred Stock with the particular rights and preferences of the Series A contemplated by the Plan.

7.07    Cancellation of Old Equity Interests.

Through the order of the Bankruptcy Court confirming the Plan and as of the Effective Date, all outstanding shares of the Debtor's old Common Stock, all awards relating to the Debtor's old Common Stock and every other kind of potential security or equity interest in the Debtor other than the Debtor's authorized but unissued class of preferred stock, whether existing or contingent or convertible into the Debtor's old Common Stock shall cease to exist on the Effective Date.  The "Record Date" or "Bar Date" for determining who holds the Old Equity and, therefore, who will receive the New Common Stock shall be the date the order confirming Debtor's plan of reorganization is signed by the Court.

7.08.    Exemption Under Section 1145.

The offer, issuance, and distribution of:  (i) all Plan Shares hereunder to holders of Allowed Claims against and Allowed Equity Interests in the Debtor, as contemplated hereunder; (ii) the issuance of new Plan Shares to old or new investors providing working capital to the Debtor upon exit from bankruptcy;  and (iii) issuance of any other equity or debt security by the Debtor for new consideration prior to or at the Effective Date shall all be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities.  In addition, pursuant to section 1145, any resales by holders who are not considered to be traditional underwriters are also exempt under those laws.

Notwithstanding the foregoing, the exemption from registration that is provided by section 1145(a) of the Bankruptcy Code will not apply if the holder of the applicable securities is an "underwriter," as that term is defined in section 1145(b) of the Bankruptcy Code.  Section 1145(b) of the Bankruptcy Code defines an "underwriter" for purposes of the Securities Act as one who (a) purchases a claim with a view to distribution of any security to be received in exchange for the claim other than in ordinary trading transactions, (b) offers to sell securities

---

[2] Debtor acknowledges that this allocation could create an absolute priority problem.  If an absolute priority issue is raised in the bankruptcy, Debtor may be forced to withdraw the equity offer through plan amendment.

issued under a plan for the holders of such securities, (c) offers to buy securities issued under a plan from persons receiving such securities, if the offer to buy is made with a view to distribution, or (d) is an issuer, as used in section 2(a)(11) of the Securities Act, with respect to such issuer of the securities, which includes control persons of the issuer.

Persons who are deemed to be "underwriters" and who receive New Common Stock pursuant to the Plan, including control person underwriters as well as persons who receive Series A Convertible Preferred Stock or New Common Stock who were not previously holders of claims against or equity interests in the Debtor are considered to hold "restricted stock" of a class of stock that is publicly traded (collectively, the "Restricted Holders").  Resales of New Common Stock by Restricted Holders will not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Restricted Holders, however, may be able, and under certain conditions described below, to sell New Common Stock without registration pursuant to the resale provisions of Rule 144 of the Securities Act ("Rule 144") or other applicable exemptions therein.

Under certain circumstances, Restricted Holders may be entitled to resell their securities pursuant to the limited safe harbor resale provisions of Rule 144, to the extent available, and in compliance with applicable state and foreign securities laws. Generally, Rule 144 provides that persons who hold securities received in a transaction not involving a public offering or who are affiliates of an issuer who resells securities will not be deemed to be underwriters if certain conditions are met. These conditions vary depending on whether the seller is a holder of restricted securities or a control person of the issuer and whether the security to be sold is an equity security or a debt security.   For holders of restricted securities or control persons in a company that is not big enough to be required to report information to the public on a periodic basis (as opposed to voluntarily reporting as the Debtor proposes to do), there are holding periods of one year.  Additionally, the conditions include the requirement that current public information with respect to the issuer be available, a limitation as to the amount of securities that may be sold in certain cases, the requirement in certain cases that the securities be sold in a "brokers transaction" or in a transaction directly with a "market maker," and that, in certain cases, notice of the resale be filed with the SEC.

7.09    Quotation. The shares of New Common Stock shall be available for quotation by any willing broker on the OTC Markets platform, after official notice of issuance, and upon the provision of adequate information about the Debtor to the marketplace either through information provided by the Debtor and filed by brokers under SEC Rule 15c2-11 or voluntarily provided and filed by the Debtor under SEC Form 10.

7.10    Source of Funds for Payments due on the Effective Date.   The operational revenues of Debtor shall be used to pay all Claims as required by the Plan, including but not limited to accumulated cash collateral as of the date the Confirmation Order is signed.  Debtor intends to raise $200,000 to $500,000 in funds from sale of the Preferred Stock to help fund its Reorganization Plan.

13

7.11    <u>Nonconsensual Confirmation</u>. In the event any Impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite statutory majority under section 1126(c) of the Bankruptcy Code, then the Debtor reserves the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

7.12.   <u>Distributions of Income</u>, If on January 1, 2015, and on January 1st, of each following year until all claims have been paid under the Plan, Debtor has more than $250,000 in cash on hand, Debtor shall pay all cash on hand in excess of $250,000 as of the January 1st of the given year to claims under the Plan in the following order of priority:

        a.     Taxes;

        b.     Secured debt;

        c.     Non tax priority claims;

        e.     Unsecured Critical Trade Vendors;

        f.     General unsecured Vendors;

No surplus distribution shall be made if it makes Debtor insolvent or reasonably unable to perform under the plan.

7.13.   <u>Retaining Professional.  Debtor may retain professionals in the business judgment of the board directors without seeking court approval after the Confirmation order is entered.</u>

### ARTICLE VIII
### GENERAL PROVISIONS

8.01     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1   Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code

8.01.2   Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy

Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan.  An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3   Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4   Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as it existed on the Filing Date

8.01.5   Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6   Bankruptcy Estate shall mean all of the assets owned by the Debtor and his estate.

8.01.7   Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8   Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9   Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10  Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

15

8.01.11   Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12   Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13   Creditor shall mean any entity holding a Claim.

8.01.14   Debtor shall mean Tootie Pie Company, Inc..

8.01.15   Disbursing Agent shall mean the Debtor.

8.01.16   Disclosure Statement shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.17   Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18   Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19   Effective Date shall mean a Business Day on or after the Confirmation Date specified by the Debtors on which the conditions to the effectiveness of the Plan specified in Article 6(B) of the disclosure statement have been satisfied or otherwise effectively waived, which date shall occur contemporaneously with the Closing Date. The Debtor shall file a notice of the Effective Date with the Bankruptcy Court and with the Securities and Exchange Commission.

8.01.20   Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21   Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

16

8.01.22    Filing Date shall mean July 3, 2013, the date Debtor filed his voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23    Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24    General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25    Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26    Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27    Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.28    Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29    New Equity Allocation shall mean the target number of 4,000,000 shares of New Common Stock and Preferred Stock for the amount issued and outstanding immediately after the Effective Date minus: (i) the number of shares of Preferred Stock accepted by the holders of Allowed Secured Claims in exchange for partial or full release of those Claims; (ii) the number of shares of New Common Stock accepted by the holders of Allowed General Unsecured Claims in exchange for partial or full release of those Claims; (iii) the number of shares of Preferred Stock accepted by the holders of Allowed Administrative Claims in exchange for partial or full release of those Claims; (iv) 1,000,000 shares of Preferred Stock reserved for issuance to existing or new shareholders of the Debtor who make new capital contributions to the Debtor on or just prior to the Effective Date; and (v) 600,000 shares of restricted New Common Stock reserved for issuance to existing shareholders on a pro rata basis.

8.01.30    Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit.  The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit.  Compromises of Avoidance Actions may

17

include cash or benefits to the Debtor or Reorganized Debtor and are not Net Proceeds.

8.01.31  Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.32  Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.33  Plan Shares shall mean the total aggregate number of shares of New Common Stock, which number represents consideration negotiated in exchange for release and extinguishment of Claims plus the New Equity Allocation or any portion thereof.

8.01.34  Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.35  Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.36  Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.37  "Record Date" or "Bar Date" shall mean the date for determining who holds the Old Equity and, therefore, who will receive the New Common Stock.   The "Record Date" or "Bar Date" shall be the date the order confirming Debtor's plan of reorganization is signed by the Court.

8.01.38  Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37  Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38  Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

18

8.01.39  Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40  Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

## ARTICLE X
## OTHER PROVISIONS

## DEFAULT

10.01.  Default.  In the event Debtor defaults on his obligations under this Plan, any Creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a clamant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment to a creditor pursuant to the terms of this Plan shall be an event of default to that creditor under the Plan. If the Reorganized Debtor fails to cure an event of default as to such payments within fifteen (15) days after service of a written notice of default from such creditor, then such creditor may exercise any and all rights and remedies under applicable non-bankruptcy law to collect such claim or seek such relief as may be appropriate in the United States Bankruptcy Court, except as such remedies have been modified specifically above.

10.02.  Default on IRS tax Debt.

(a)  That the debt owed by the Debtors to the Internal Revenue Service (IRS) is a Non-Dischargeable debt, except as otherwise provided for in the Code, and that if the Debtors default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and

19

dismissal of the case.  The Liens continue to be enforceable against all of the debtor's property under federal law.

(b)   A failure by the Debtors to make a payment to the Internal Revenue Service pursuant to the terms of the Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 15th day of each month.  If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 15 days of the date of the demand letter.  The Debtor can receive up to three notices of default from the Internal Revenue Service; however, on the third notice of default from the Internal Revenue Service the third notice cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.  These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.

(c)   The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the debtors for prepetition claims during the duration of the Plan (provided there is no default as to the IRS).  The period of limitations on collection remains suspended under 26 USC 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the debtor failed to cure the default.

10.03.  <u>Vesting of Estate Property and Effect of Default.</u>  On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan.  If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

Respectfully submitted,


By: ____/s/ Les Doss_____
       Les Doss, President, Tootie Pie Company Inc.


By: ____/s/ Ronald J. Smeberg_____
       Ronald J. Smeberg, Attorney for Debtor

       State Bar No. 24033967
       11550 IH 10 West, Suite 180
       San Antonio, Texas 78230
       210-695-6684 (Tel)
       210-598-7357 (Fax)
       ATTORNEY FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **TOOTIE PIE COMPANY, INC. D/B/A** | § | **Case No. 13-51808** |
| **TOOTIE GOURMET PIE CAFÉ** | § | |
| | § | |
| **Debtor** | § | |

**DEBTOR TOOTIE PIE COMPANY, INC.'S FIRST SUPPLEMENT TO DEBTOR'S**
**FIRST AMENDED PLAN OF REORGANIZATION DATED FEBRUARY 14, 2014**

Debtor, Tootie Pie Company, Inc. hereby files this First Supplement to Debtor's First

Amended Plan of Reorganization Dated February 14, 2014 and shows:

Debtor's first amended plan and disclosures statement was filed on February 14, 2014.

The following paragraph is hereby added to Debtor's First Amended Plan of Reorganization

Dated February 14, 2014 under <u>Article X, Other Provisions</u>:

> 10.04. <u>Approval of Don Merrill Settlement.</u>  Pursuant to Section III(D) of Debtor's First Amended Disclosure Statement Dated February 14, 2014, confirmation of Debtor's Plan of Reorganization shall Constitute Court Approval of Debtor's Settlement with Don Merrill attached as Exhibit I to Debtor's First Amended Disclosure Statement Dated February 14, 2014.  Further, upon confirmation of Debtor's plan of reorganization, the reorganized Debtor shall be authorized to complete any action required to fulfill its obligations under the settlement agreement.

Dated February 21, 2014

Respectfully submitted,


By: ___*/s/ Leslie E. Doss*_____ _____ __
    Leslie E. Doss, President,
    Tootie Pie Company, Inc.


By:___*/s/ Ronald J. Smeberg*_____ _____
    Ronald J. Smeberg, Attorney for Debtor

1

State Bar No. 24033967
11550 IH 10 West, Suite 180
San Antonio, Texas 78230
210-695-6684 (Tel)
210-598-7357 (Fax)
ATTORNEY FOR DEBTOR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2014, true and correct copies of the attached was

served upon the attached service list by first class mail postage prepaid:

By:___/s/ Ronald J. Smeberg

## SERVICE LIST

**DEBTOR**

Les Doss
129 Industrial Dr.
Boerne, TX 78006

**GOVERNMENTAL ENTITIES**

U. S. Trustee
Attn: James Rose
P.O. Box 1539
San Antonio, TX 78295

U.S. Attorney
Attn: Bkcy Division
601 NW Loop 410, Suite 600
San Antonio, TX 78216

Attorney General of U.S.
Main Justice Bldg., Rm 511
10th and Constitution Ave., NW
Washington, DC 20530

Texas Comptroller of Public Accounts
% Jason A. Starks
Office of the Attorney General
Bankruptcy-Collections Division
P. O. Box 12548
Austin, Texas 78711-2548

Internal Revenue Services
Special Procedures Branch
300 E. 8th St. STOP 5026 AUS
Austin, TX 78701

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

SEC Headquarters
100 F Street, NE
Washington, DC 20549

Elizabeth Weller
LINEBARGER GOGGAN
BLAIR & SAMPSON, LLP
2323 Bryan Street,
Suite 1600
Dallas, Texas 75201

David Aelveolt
LINEBARGER GOGGAN
BLAIR
& SAMPSON, LLP
711 Navarro Street, Suite 300
San Antonio, Texas 78205-1749

John T. Banks

Perdue, Brandon, Fielder,
Collins & Mott, LLP
3301 Northland Drive,
Suite 505
Austin, Texas 78731-4954

Collin County Tax Assessor-Collector
% David B. McCall
GAY MCCALL ISAACKS
GORDON & ROBERTS, P.C.
777 East 15th Street
Plano, Texas 75074-5799

Kendall County
% John T. Banks
PERDUE, BRANDON, FIELDER,
COLLINS & MOTT, LLP
3301 Northland Drive, Suite 505
Austin, Texas 78731-4954

City of Austin
d/b/a Austin Energy
721 Barton Springs Road
Austin, Texas 78704-1194

Bandera Electric Cooperative,
Inc.
P. O. Box 667
Bandera, Texas 78003

City of Alamo Heights
6116 Broadway Street
San Antonio, Texas 78209

City of Austin-Mopac
P. O. Box 2267
Austin, Texas 78783-2267

City of Austin-Westlake
P. O. Box 2267
Austin, Texas 78783-2267

City of Boerne
400 E. Blanco Road
Boerne, Texas 78006

Texas Department of Health Services
P. O. Box 12008
Austin, Texas 78711

CPS Energy
Attn: Bankruptcy Dept.
P. O. Box 2678
San Antonio, Texas 78289-0001

**CREDITORS**

Ace Mart Restaurant Supply Co.

P.O. Box 974297
Dallas, TX 75397

Airgas
59559 Distribution
San Antonio, TX 78218

Airgas USA, LLC
% Lisa Menton
WATSON REALTY CORP.
110 W. 7th Street, Suite 1300
Tulsa, Oklahoma 74119-1106

Akin, Doherty, Klein
& Feuge, P.C.
8610 N. New Braunfels
Suite 101
San Antonio, TX 78217

AmeriCold Logistics, LLC
11850 Center Road
San Antonio, TX 78223

APAC Packaging & Supply
104 Industrial Drive
Suite 102
Boerne, TX 78006

Arbor Walk Mall, LLC
P. O. Box 741748
Atlanta, GA 30374

Atmos Energy Corporation
Attn: Bankruptcy Group
P. O. Box 650205
Dallas, Texas 75265-0205

Bates Container
P. O. Box 1359
Von Ormy, TX 78073

Ben E. Keith Company
% S. David Greenlee
601 East 7th Street
Fort Worth, Texas 76102-5501

Ben E. Keith Foods
Attn: Bankruptcy Dept.
5505 Kaepa Court
San Antonio, TX 78218

Beverage Solutions
10740 Hillpoint
Suite 5
San Antonio, TX 78217

Bobbie Lee Keese
7930 Viking Trail
San Antonio, Texas 78250-6247

Braun Beef Inc.
P. O. Box 7850
San Antonio, TX 78207

Brian Gile
1530 Buena Park Drive
Frisco, Texas 75033

Business Wire, Inc.
Department 34182
P. O. Box 39000
San Francisco, CA 94139

Carla Carter
305 Schweppe Street
Boerne, Texas 78006-2725

Cenveo
P. O. BOX 536900
Atlanta, GA 30353

CND Signs & Printing
4700 Burleson
Unit 1
Austin, TX 78744

CoServ Electric
7701 S. Stemmons Freeway
Corinth, Texas 76210

CPS Energy
Attn: Bankruptcy Dept.
P. O. Box 2678
San Antonio, TX 78289

Dell Financial Services
P. O. Box 81577
Austin, TX 78708

Dan Gostylo
100 NE Loop 410 Suite 950
San Antonio, Texas 78216

Deerfield Crossing, Ltd.
7373 Broadway
Suite 101
San Antonio, TX 78209

Don L. Merrill, Jr.
7731 Broadway Street, Apt.
314C
San Antonio, Texas 78209-3216

Don Merrill, Sr.
% Don L. Merrill, Jr.
7731 Broadway Street, Apt.
314C
San Antonio, Texas 78209-3216

Edgar A. Weber & Company
549 Palwaukee Drive

Wheeling, IL 60090-6049

Federal Filings, LLC
815-A Brazos Street
Suite 502
Austin, TX 78701

FFE Transportation
Services, Inc.
P. O. Box 655888
Dallas, TX 75265

FFE Transportation Services,
Inc.
1145 Empire Central Place
Dallas, Texas 75247-4305

First Choice Heating
& Air Conditioning
P. O. Box 760877
San Antonio, TX 78245

Flat Iron Capital
Department 2195
1700 Lincoln Street
12th Floor
Denver, CO 80203

Flow Rite Plumbing
P. O. Box 965
Frisco, TX 75034

Ford Motor Credit Company,
LLC
% Cathy A. Kelley
GOODE CASSEB JONES RIKLIN
CHOATE & WATSON, P.C.
2122 North Main Avenue
San Antonio, Texas 78212-5851

Forum Systems Group
6808 West Avenue
San Antonio, TX 78213

G & K Services
P. O. Box 830483
San Antonio, TX 78283

Grande Communications
500 Tittle Road
The Colony, TX 75056

GS1 US, Inc.
P. O. Box 71-3034
Columbus, OH 43271

Hart Employments Services
220 S. Kenwood Street
Suite 320
Glendale, CA 91205

Heartland Payment Systems
90 Nassau Street
Princeton, NJ 08542

Heye Refrigeration, Inc.
1514 E. Commerce Street
San Antonio, TX 78205

Hill Country Refrigeration
432 S. Lincoln Street
Fredericksburg, TX 78624

J Anthony's Refrigeration, Inc.
20770 Hwy 281 North
Suite 108-606
San Antonio, TX 78258

Jim & Betty Wade
8633 Willow Wind
Boerne, TX 78015

Karen Williams
7731 Broadway Street, Apt.
314C
San Antonio, Texas 78209

KeHe Distributors, LLC
% Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Rd.
2nd Floor
Milwaukee, WI 53212-1078

Label Arts
P. O. Box 727
Kemp, TX 75143

Lentz Computer Services
218 Morningside Drive
San Antonio, TX 78209

Lincoln
Ford Credit
P. O. Box 650575
Dallas, TX 75265

Liquid Environmental Solutions
P. O. Box 203371
Dallas, TX 75230

Logical Control Services
2525 Tarpley Road
Suite 108
Carrollton, TX 75006

Mae Vion Meyer R.T.A.
Bandera County Tax Office
P. O. Box 368
Bandera, TX 78003

Marcia A. Chamberlain
308 Sandy Oaks Drive
Boerne, Texas 78015-8350

MC2 Studios, Inc.
7970 Fredericksburg Road
Suite 101-348
San Antonio, TX 78229

Meaders GP, LLC

5934 Royal Lane
Suite 250
Dallas, TX 75230

Mission Restaurant Supply
Attn: Bankruptcy Dept.
P. O. Box 13010
San Antonio, TX 78213

Muzak, LLC
P. O. Box 1121
San Antonio, TX 78229

Oak Hills Pest Control, Inc.
107 Parkway
Boerne, TX 78006

Orkin - Austin
601 N. Glenville Drive
Suite 125
Richardson, TX 75081

Pack-Mark, Inc.
1375 E. Bitters Road
San Antonio, TX 78216

Performance Food Group, L.P.
% Bill Malone, Jr.
8650 Spicewood Springs Road,
Suite 145-598
Austin, Texas 78759-4322

PFG-Temple
P. O. Box 951641
Dallas, TX 75395

Pinnacle Propane
33200 US Hwy 281 N.
Suite 2
Bulverde, TX 78163

Pioneer Storage Trailers
51 Essex
San Antonio, TX 78210

PrecisionIR, Inc.
Lockbox 7391
P. O. Box 8500
Philadelphia, PA 19178

Rackspace, US Inc.
1 Fanatical Place
Windcrest, Texas 78218-2179

Radiant Systems
3825 Brookside Parkway
Alpharetta, Georgia 30022

Randy Gene Graybill
106 Marquardt Road
Boerne, Texas 78006-7125

Red Dirt Food Group
5030 N. May Avenue
Suite 101

Oklahoma City, OK 73112

Register and Transfer Company
10 Commerce Drive
Cranford, NJ 07016

Richard Craig Smith
5214 Pond Lake
San Antonio, Texas 78244-2086

River City Waste, Inc.
11234 Blue Wing Road
San Antonio, TX 78223

Robert Kinsella, Inc.
d/b/a Premier Sales Solutions
535 Nolen Drive, Suite 100
Southlake, Texas 76092-9194

San Antonio Express News
P. O. Box 2171
San Antonio, TX 78297

Simon Property Group, LP
% Ronald M. Tucker
225 W. Washington Street
Indianapolis, Indiana
46204-3435

Smeltzer Orchard Co.
6032 Joyfield Road
Frankfort, MI 49635

Southern Warehousing &
Distribution
P. O. Box 8100
San Antonio, TX 78208

Southwest Fire Protection
P. O. Box 701490
San Antonio, TX 78270

Stephen G. Gamboa
168 Faith Drive
San Antonio, Texas 78228-2340

The Stewart Center, Inc.
5120 Broadway
San Antonio, TX 78209

Tammy A. Edmiston
130 Lauren Lane
Boerne, Texas 78006-1939

TCA Global Credit Master Fund,
LP
% Holland O'Neil & Virgil
Ochoa
Gardere Wynne Sewell, LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4757

TCA Fund Management Group
C/O Bob Press, CEO
1404 Rodman Street

Hollywood, FL 33020

Tea & Coffee America
1070 Lindbergh Drive
Beaumont, TX 77707

Tiger Sanitation
P. O. Box 200143
San Antonio, TX 78220

Time Warner Cable
P. O. Box 660545
Dallas, TX 75266

Time Warner Cable
12012 N. Mopac Fwy
Austin, Texas 78758

Tri-Media
20 Corporate Park Drive
Unit 103
St. Catharines, Ontario
L2S 3W2 Canada

Unifirst Corporation
3047 E. Commerce Street
San Antonio, TX 78220-1036

UniFirst Holdings, L.P.
d/b/a UniFirst
% Kyle E. Neill, P.C.
11550 IH-10 West, Suite 287
San Antonio, Texas 78230-1063

United Parcel Service, Inc.
% Jonathan W. Jordan
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3531

Village at Allen, LP
% J. Robin Lindley
Buck | Keenan, LLP
700 Louisiana Street, Suite 5100
Houston, Texas 77002-2766

Village at Allen, LP
The Village at Fairview
329 Town Place
Fairview, TX 75069-1825

Virtual Telecom
2810 N. Flores Street
San Antonio, TX 78212

Wansley Refrigeration Service
4111 Guadalupe
Austin, TX 78751

Waste Management
P. O. Box 660345
Dallas, TX 75266

Westlake Retail Limited
Partnership

% Joshua Dylan Bradley
Rosenberg Martin
Greenberg, LLP
25 S. Charles Street, Suite 2115
Baltimore, Maryland
21201-3322

Westex Capital, LTD
d/b/a Pico Petroleum Products
P. O. Box 1309
Del Rio, TX 78841

Whitestone Reit
% Michael Durrschmidt
Hirsch & Westheimer, P.C.
1415 Louisiana Street, 36th FL
Houston, Texas 77002-7360